IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BRETON, LLC,                         )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )     1:10cv1309 (LMB/IDD)
                                     )
THE LINCOLN NATIONAL LIFE            )
INSURANCE COMPANY,                   )
                                     )
        Defendant.                   )

AUG 1 9 2011

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment [Dkt. Nos. 51 and 54]. For the following reasons, the defendant's motion will be granted and the plaintiff's motion will be denied.

## I. Background

This civil action presents a dispute over the payment of insurance and takings proceeds, along with a claim for the recovery of attorneys' fees incurred in an earlier insurance coverage action in this District. The central dispute concerns whether the plaintiff's attorneys are entitled to recover their fees as a percentage of the insurance and takings proceeds, pursuant to various contingency fee agreements with the plaintiff, or whether the defendant is entitled to recover those insurance

and takings proceeds and apply them, <u>inter alia</u>, to its own attorneys' fees.

### A.   Relevant contractual provisions

The plaintiff, Breton, LLC ("Breton"), is a Virginia limited liability company owned and controlled by Heman Ward ("Ward"), along with several other members of his family.  <u>See</u> Def.'s Mot. for Summ. J., Ex. 1 (Ward Dep.) at 13:1-14:14.  On July 5, 2003, Breton executed a Promissory Note, secured by a Deed of Trust, in favor of Jefferson Pilot Financial Insurance Company ("Jefferson Pilot").  <u>See</u> <u>id.</u> at Ex. 2 (Promissory Note).  Jefferson Pilot subsequently merged with and into the defendant in this action, The Lincoln National Life Insurance Company ("Lincoln National"), effective July 2, 2007, such that Lincoln National is now the mortgagee and the holder of the Note and Deed of Trust executed by Breton.  <u>See</u> <u>Breton, LLC v. Graphic Arts Mut. Ins. Co.</u>, No 1:09cv60, Dkt. No. 87 at Ex. 6 (Certified Certificates of Merger).

The July 5, 2003 Deed of Trust entered into by Breton encumbers five industrial properties that Breton owns in Springfield, Virginia, and was executed as security for an $8.2 million loan to Breton.  The Deed of Trust was properly recorded in the land records of the Fairfax County Circuit Court, the court with jurisdiction over the subject properties, in August 2003.

2

See Def.'s Mot. for Summ. J., Ex. 3 at 43 (Deed of Trust with
clerk's annotation, showing recordation on August 4, 2003).

Among other relevant provisions, the Deed of Trust assigns
all insurance and condemnation proceeds to Jefferson Pilot (now
Lincoln National)[1], gives Lincoln National the right to determine
the manner in which such proceeds will be applied, and requires
Breton to pay reasonable attorneys' fees incurred by Lincoln
National relating to the Deed of Trust. See id. (Deed of Trust)
§ 1.03 (providing that "[i]n the event of loss" under an insurance
policy covering the subject properties, Lincoln National "shall be
entitled to receive and retain all insurance proceeds," and has
the option to apply all such proceeds "upon any indebtedness
secured hereby in such order as [it] may determine"); id. § 1.05
(stating that "[a]s further security . . . [Breton] hereby assigns
to LENDER [Lincoln National] all judgments, awards or damages or
settlements [sic] hereafter made resulting from condemnation
proceedings," and that Lincoln National has the right to "apply
any [condemnation proceeds] so received after payment of all of
its expenses, including costs and reasonable attorneys' fees, to
the indebtedness secured hereby"); see also id. § 1.10 (providing
that Breton "shall . . . pay all expenses actually incurred, or

---

[1]   Unless otherwise indicated, Lincoln National and
Jefferson Pilot will hereinafter be referred to interchangeably.

contracted to be paid, by LENDER [Lincoln National] (including reasonable and actual fees and disbursements of counsel) incident to the protection or enforcement of the rights of . . . [Lincoln National] hereunder . . . .").

## B.  Prior insurance coverage litigation

In 2003, as a condition for the closing of the loan, Lincoln National required that Breton obtain insurance for the properties covered by the Deed of Trust, and that the insurance policy name Lincoln National as an additional insured.  Through 2007, Breton had such a policy with Graphic Arts Mutual Insurance Company ("Graphic Arts"), and the policy specifically named Lincoln National's predecessor, "Jefferson-Pilot Life Ins. Co." as the mortgagee.  See Pl.'s Mot. for Summ. J. at Ex. 6.  After a fire destroyed one of the subject properties, a 37,500 square foot warehouse located at 7396 Ward Park Avenue, in December 2007, Breton filed a coverage claim with Graphic Arts, retaining the law firm of Silver & Brown, P.C. ("Silver & Brown") to assist in prosecuting that insurance claim.

The contingency fee arrangement between Breton and Silver & Brown, which was entered into in May or June 2008, provided that Breton "agrees to pay [Silver & Brown] for its services a fee of Fifteen Percent (15%) of . . . [a]ny and all amounts recovered from, and/or paid by [Graphic Arts] to [Breton], or on [Breton's]

behalf ('Recovered Amounts')." See Def.'s Mot. for Summ. J. at

Ex. 5 (Contingency Fee Agreement) ¶ 2. The agreement further

states:

> [Silver & Brown] shall receive, and [Breton]
> irrevocably assigns, that portion of the Recovered
> Amounts that represents the Attorneys [sic] fee, and in
> this regard the Recovered Amounts shall be paid to
> [Silver & Brown] who shall be entitled to retain
> therefrom its percentage Attorney's fee as specified
> herein, and, before disbursing the remainder to
> [Breton] and others entitled thereto, [Silver & Brown]
> may deduct therefrom the amount of costs and expenses
> advanced . . . . [Breton] agrees that [Silver &
> Brown's] name shall be included on any check payable by
> [Graphic Arts].

Id. ¶ 6. Ward did not consult Lincoln National before entering

into that contingency fee agreement on Breton's behalf, and

Lincoln National claims that it was not aware of the agreement

until after Breton filed the instant action. See Def.'s Mot. for

Summ. J. at 6 (citing id., Ex. 1 (Ward Dep.) at 137:11-15).

Meanwhile, Silver & Brown contends that before executing the

contingency fee agreement, it "had not reviewed" and "did not have

a copy" of the 2003 Deed of Trust, and therefore was unaware that

Breton had already assigned all of its rights to any insurance

proceeds to Lincoln National. See Def.'s Mot. for Summ. J., Ex. 6

(Brown Dep.) at 134:18-135:10.

Graphic Arts originally denied Breton's insurance claim, on

the ground that Breton was barred from coverage because it had

5

failed to maintain the sprinkler system at 7396 Ward Park Avenue and impermissibly delegated its maintenance.  Specifically, "[a]t some point after the denial, but before suit was filed" by Breton, counsel for Graphic Arts informed Silver & Brown that "Graphic Arts' position was that if the sprinkler failed to operate, a condition of the insurance was not met, and there was no policy coverage for either [Breton] or the mortgagee [i.e., Lincoln National]."  Id. at Ex. 7 (Brown Aff.) ¶¶ 6-7; see also id., Ex. 6 (Brown Dep.) at 141:16-145:10.  Graphic Arts' counsel also subsequently communicated a similar position to lead trial counsel for Lincoln National.  See id., Ex. 8 (Harden Dep.) at 52:19-53:8; see also Exs. 9 and 10 (May 2009 letter and e-mail to that effect).

Throughout October 2008, counsel for Breton and Lincoln National exchanged a series of e-mails relating to the insurance coverage dispute.  In those e-mails, counsel for Breton (Silver & Brown) initially indicated a desire to have Lincoln National join in the action as a co-plaintiff.  See id., Ex. 11 at LN00013623-24.[2]  However, on October 13, 2008, Lincoln National, after consulting with its in-house litigation counsel, indicated that

---

[2]  Notably, those e-mails did not disclose that Silver & Brown believed that it had a 15% financial interest in the insurance proceeds pursuant to its contingency fee agreement with Breton.

its "litigation department . . . declines to become involved in
[the] dispute" with Graphic Arts. <u>Id.</u>, Ex. 12 at PRC000055.
Because Silver & Brown had previously transmitted a draft
complaint to a representative of Lincoln National, in which
Lincoln National was named as a defendant that "may have[] an
interest in the insurance proceeds given its status as a mortgagee
under the policy," <u>id.</u>, Ex. 11 at LN00013626, 13628 (October 6,
2008 e-mail), Lincoln National reminded Breton of the attorneys'
fees provisions in the underlying Deed of Trust.  Specifically, in
an e-mail dated October 13, 2008, and on which Ward was copied,
Joe Tilley ("Tilley"), an employee of Phillips Realty Capital,
which functioned as a servicer and intermediary for Lincoln
National with respect to the Breton loan, stated:

> [H]ere is a response that I received from the lender on
> Friday.  As you can see, they decline to become
> involved and, since they are a named defendant, remind
> the borrower that they will be responsible for any
> legal expenses that Lender incurs as a result.

<u>Id.</u>, Ex. 12 at PRC0000055 (forwarding an e-mail from Sherrie R.
Davis of Lincoln National, stating "Litigation . . . also pointed
out that as the case currently reads they have us named as a
defendant and asked that I remind the borrower that if we incur
legal expenses because of this lawsuit, per our mortgage with
them, they will be responsible for the cost.").

Despite Lincoln National's responses to the plan to name it in the Graphic Arts lawsuit, Breton, represented by Silver & Brown, filed a complaint in this District on January 21, 2009, naming both Graphic Arts and Lincoln National as defendants. See Breton, LLC v. Graphic Arts Mut. Ins. Co., No. 1:09cv60 (Trenga, J.) ("Breton I"), at Dkt. No. 1.[3] The complaint indicated that Lincoln National was being included as a party defendant because it may have an interest in the insurance proceeds, and it further sought a declaration of Lincoln National's rights to the insurance proceeds in the event that Breton was denied coverage. Breton I at Dkt. No. 1, ¶¶ 5, 54-58. However, the complaint did not seek any actual relief against Lincoln National; instead, all relief was sought purely against Graphic Arts. See id. ¶¶ 24-65.

In response to the Breton I complaint, Graphic Arts denied that it had any obligation to pay the insurance proceeds to Breton or to Lincoln National, and further asserted that Breton lacked standing to protect Lincoln National's claims to those proceeds. See Breton I at Dkt. No. 7 (Graphic Arts' Answer, Affirmative Defenses, and Countercl.). Lincoln National, for its part, retained the law firm of Womble Carlyle Sandridge & Rice, PLLC

---

[3] The complaint that was filed in Breton I in January 2009 is identical in material part to the draft complaint that was transmitted to Lincoln National in October 2008. Compare Breton I at Dkt. No. 1, with Def.'s Mot. for Summ. J. at Ex. 11.

("Womble Carlyle") to represent it in the <u>Breton I</u> insurance coverage action.  Lincoln National claims that it did so because it felt that it "had to hire outside counsel to protect [its] interests," and that not doing so "would be imprudent and foolish."  Def.'s Mot. for Summ. J., Ex. 4 (Spearman Dep.) at 97:16-98:4, 100:3-5; <u>see also id.</u> at 125:7-126:13 (stating that with "Graphic Arts . . . asserting that they weren't going to pay anybody," Lincoln National was "not going to wait to see how things turn out" before "preserving [its] rights under the deed of trust").  Lincoln National filed an Answer to the <u>Breton I</u> complaint on March 13, 2009, stating, <u>inter alia</u>, that "Plaintiff['s] Complaint fails to state any claims against Lincoln National for which relief is owed by Lincoln National to anyone." <u>Breton I</u>, Dkt. No. 14 (Lincoln National's Answer and Cross-Cl.) at 9 ("First Defense").

Lincoln National, however, also filed a cross-claim against Graphic Arts to establish its rights to recover the insurance proceeds in the event that the court were to reject Breton's coverage claim.  <u>See id.</u> at 9-16.  Specifically, Lincoln National's Answer and Cross-Claim included two counts against Graphic Arts: one seeking a declaratory judgment that it was entitled to payment, and the other seeking imposition of a judgment for money damages.  <u>Id.</u>  The second cross-claim, seeking

9

monetary damages for breach of the insurance contract, was
voluntarily dismissed without prejudice pursuant to Fed. R. Civ.
P. 41(a)(2).  See id. at Dkt. Nos. 71 and 83.

On November 10, 2009, the Honorable Anthony J. Trenga
granted Breton's Motion for Summary Judgment against Graphic
Arts, finding that Breton had properly established its
entitlement to insurance coverage and that Graphic Arts was
required to pay insurance proceeds to compensate Breton for the
fire.  See id. at Dkt. Nos. 110 and 111.  In light of that
ruling, Judge Trenga denied Lincoln National's Motion for Summary
Judgment on its remaining cross-claim as moot, and dismissed that
cross-claim without prejudice.  Id.  On April 8, 2010, the Court
then entered a final order stating that Breton is entitled to a
total of approximately $4.1 million, plus interest, under its
insurance policy with Graphic Arts.  Id. at Dkt. No. 133.
Graphic Arts appealed that decision; the United States Court of
Appeals for the Fourth Circuit heard oral argument on the matter
in May 2011, and a decision is currently pending.[4]

Lincoln National incurred approximately $340,000.00 in
attorneys' fees and expenses as a result of its involvement in
the Breton I litigation, and it claims that it is entitled to

---

[4]   Lincoln National did not appeal the dismissal of its cross-
claim as moot, and that issue is therefore not before the Fourth
Circuit.

10

indemnification of those fees and costs by Breton under the terms of the 2003 Deed of Trust.  See Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 26-30.  Lincoln National also argues that it is entitled to recover the insurance proceeds that Breton was awarded in the litigation against Graphic Arts, and to apply those proceeds to Breton's indebtedness, including all reasonable attorneys' fees, as it chooses.  See id. at 19-22.

On June 13, 2011, however, Silver & Brown filed a U.C.C. financing statement purporting to cover its fees for all legal services rendered in the insurance coverage action against Graphic Arts.  See Pl.'s Opp. to Def.'s Mot. for Summ. J. at Ex. 37 (U.C.C. Financing Statement).  Silver & Brown contends that that financing statement entitles it to priority over Lincoln National for the payment of its attorneys' fees out of the Graphic Arts insurance proceeds.  See, e.g., id. at 15-19; see also Mem. in Supp. of Pl.'s Mot. for Summ. J. at 29-30.

C.  VDOT "quick take" taking proceedings

While the insurance coverage action with Graphic Arts was pending, and entirely unrelated to that coverage action, Breton was notified by the Commonwealth's Commissioner of Transportation that the Virginia Department of Transportation ("VDOT") was exercising its "quick take" eminent domain rights to take a parcel of land along the perimeter of the lot on which the

burned-down warehouse had been situated, to use in construction of the Fairfax County Parkway.  See Def.'s Mot. for Summ. J. at Ex. 19.  That lot was also encumbered by Lincoln National's Deed of Trust, but it appears that Breton did not promptly inform Lincoln National of the initiation of the takings proceedings involving the property.  Instead, Breton once again retained Silver & Brown to handle the impending taking, and executed a second Contingency Fee Agreement with Silver & Brown in February 2009.  See id. at Ex. 20.

That February 2009 Contingency Fee Agreement also purports to assign to Silver & Brown a portion of any condemnation proceeds, stating that Breton "agrees to pay [Silver & Brown] for its services a fee of Twenty Percent (20%) of: Any and all amounts in excess of . . . $473,000 . . . which is paid by [VDOT] (or paid on its behalf) as to the taking."  Id. ¶ 2.  The agreement further states that Breton "irrevocably assigns" 20% of any recovery in excess of $473,000 to Silver & Brown, and that "before disbursing the remainder to [Breton] and others entitled thereto, [Silver & Brown] may deduct therefrom the amount of costs and expenses advanced."  Id. ¶ 6.  Once again, Silver & Brown claims that when entering into that fee agreement with Breton, it was unaware of the Deed of Trust that already granted Lincoln National full rights to any condemnation proceeds paid on any of the subject

properties.  See Def.'s Mot. for Summ. J., Ex. 6 (Brown Dep.) at 138:18-139:5; see also id. at Ex. 21.

Under Virginia law, VDOT is empowered to take land through eminent domain proceedings, see Va. Code Ann. §§ 33.1-89(A), 33.1-98, but before doing so, it must convey "the amount that [it] estimates to be the fair value of the land taken" to "the court wherein condemnation proceedings are pending, or are to be instituted," id. § 33.1-120.  Accordingly, on March 30, 2009, VDOT recorded a "Certificate of Take" in the Fairfax County Circuit Court, certifying that VDOT, in accordance with an appraisal of the property and an offer to Breton, had paid $473,000 to the Fairfax County court as compensation for the proposed taking of Breton's land.  See Def.'s Mot. for Summ. J. at Ex. 22.  Breton, represented by Silver & Brown, then negotiated with VDOT to increase the compensation, and on March 18, 2010, Breton and VDOT entered into a settlement agreement increasing the amount that VDOT would pay to $540,000.  See id. at Exs. 23 and 24.  In May 2010, VDOT paid the additional $67,000 required by the settlement agreement to the Fairfax County court.  Id. at Ex. 27.  Those funds are currently being held by the Clerk of the Circuit Court of Fairfax County, pending a resolution of the instant civil action.

As of March 18, 2010, Lincoln National had still not been informed of the taking, nor had it been given an opportunity to approve or agree to the settlement. VDOT expressed concerns to Breton, Ward, and Silver & Brown that the taking could not be completed until Lincoln National agreed to the $540,000 settlement, and in May and June 2010, VDOT therefore encouraged Silver & Brown to "contact the lender [Lincoln National]" for a release. Id., Ex. 25 at B0000036 (e-mails from VDOT to Silver & Brown); see also id., Ex. 1 (Ward Dep.) at 85:9-86:12 (testifying that Ward "thought [Lincoln National] would have to approve" any settlement because VDOT had "stated that would be the case"); id., Ex. 6 (Brown Dep.) at 35:10-16 ("I don't think there is a settlement agreement until the lender agrees."). Breton and Silver & Brown, however, did not inform Lincoln National of the taking and proposed settlement agreement until July 13, 2010. Id. at Ex. 24; see also id., Ex. 6 (Brown Dep.) at 60:16-61:8; Ex. 1 (Ward Dep.) at 84:2-6.

Breton claims that after notifying Lincoln National of the taking, it "tendered" the condemnation funds "[i]n an attempt to resolve matters with Lincoln [National]." Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3. Specifically, Breton offered to pay all of the condemnation proceeds to Lincoln National (or, rather, to seek a distribution of the condemnation funds from the Fairfax

14

court), on the condition that those funds would be applied to reduce the principal on the outstanding loan. See id. More specifically, Breton conditioned the disbursement of the condemnation funds on Lincoln National's agreement to release its lien over the condemned property and not to exercise its claimed rights under the Deed of Trust to apply the condemnation funds to its attorneys' fees. See Mem. in Supp. of Def.'s Mot. for Summ. J. at 13-14.

Lincoln National, however, refused to accept the funds under those conditions, instead asserting that it was entitled to apply the condemnation funds first to the approximately $340,000 in attorneys' fees that it had allegedly incurred in the Breton I litigation, along with any fees incurred as a result of the takings proceedings and the instant civil action. Id.[5] Only then would Lincoln National agree to apply the remainder of the proceeds to reduce the amount of Breton's indebtedness. Id.

Meanwhile, in an effort to establish priority for its alleged attorneys' fees lien, Silver & Brown included a claim for its

---

[5] Similarly, counsel for Lincoln National asserted in several letters to Breton's counsel that when the insurance proceeds from the Breton I litigation were paid, Lincoln National intended to use those proceeds first to reimburse itself for its legal fees, and then either to pay down the loan or to rebuild the burned-down warehouse, at Lincoln National's discretion.

15

promised portion of the condemnation proceeds in its June 13, 2011 U.C.C. Financing Statement. See Pl.'s Opp. to Def.'s Mot. for Summ. J. at Ex. 37. That financing statement asserts a lien on "[a]ny and all proceeds from . . . or related to the taking of [Breton's] property by the Virginia Department of Transportation ('VDOT')," id., and Breton once again argues that the financing statement entitles it to priority over Lincoln National for the recovery of its attorneys' fees as a percentage of the VDOT takings proceeds, see Pl.'s Opp. to Def.'s Mot. for Summ. J. at 15-20.

D.   **This civil action**

In November 2010, Breton filed this declaratory judgment action, asserting a host of different claims. See Dkt. No. 3 (Pl.'s Amend. Compl.) at 11-14 (listing various claims and seeking declaratory judgment on at least 14 different issues, enumerated on page 14 as issues (i) through (xiv)). However, it appears that no actual case or controversy currently exists as to many of those claims.[6]

---

[6]   Specifically, Lincoln National's production of all bills supporting its claims to reasonable attorneys' fees, without redactions, renders moot Breton's allegation that Lincoln National "refus[ed] to produce attorneys' fee bills." Id. at 14 (claim (ix)). In addition, because Lincoln National is not actually seeking a "prepayment premium" after a declared "Event of Default," there is no longer any live controversy as to plaintiff's payoff and pre-payment penalty claims. See id. (claims (iv), (v), and (xii)); see also Dkt. No. 8 (Def.'s Answer

16

The remaining live issues in this case all center in some way on the entitlement of Lincoln National and Silver & Brown to their respective attorneys' fees. See, e.g., Pl.'s Amend. Compl. at 14 (claims (i), (ii), and (x)). Specifically, Breton asserts that Silver & Brown's purported attorneys' fees lien on the condemnation funds and the proceeds from the Breton I litigation takes precedence over, and is superior to, Lincoln National's rights to those funds, see id. at 14 (claims (vii) and (xiii)), while Lincoln National asserts that it has an earlier-filed and properly perfected security interest in all such proceeds, see Def.'s Answer & Countercl. ¶ 47(b)-(e).

The parties also dispute whether Lincoln National is entitled under the Deed of Trust to receive the insurance and condemnation proceeds and to apply them first to its reasonable attorneys' fees. See id. ¶ 47(a), (f)-(h).  Finally, Breton argues that Lincoln

and Countercl.) ¶¶ 40, 55 (admitting that "absent an Event of Default as defined in the Loan Documents, . . . the amounts actually applied to principal are not subject to the prepayment premium").  Finally, it appears that Breton is no longer pursuing its claim that it "need make no further payments" on the loan "until Defendant produces the original note at its own counsel's office in Northern Virginia," see Pl.'s Amend. Compl. at 14 (claim (viii)), and has apparently also abandoned its argument that "the Plaintiff is not in breach of the note or deed of trust," id. at 14 (claim (xi)); see also Pl.'s Opp. to Def.'s Mot. for Summ. J. at 2 (characterizing the allegations of technical defaults by Breton under the Deed of Trust as "immaterial to any of the remaining issues in the case").

National "wrongfully refused" Breton's "tender" of the condemnation proceeds, and that Lincoln National is "in breach of the covenant of good faith and fair dealing under the Note and Deed of Trust." Pl.'s Amend. Compl. at 14 (claims (iii) and (vi)).

In its Motion for Summary Judgment [Dkt. No. 54], Lincoln National asks this Court to enter a declaratory judgment that Breton's claim regarding Silver & Brown's purported lien for attorneys' fees is barred as a matter of law, and that Lincoln National is entitled to receive the insurance and condemnation proceeds and to apply them as it chooses. See Mem. in Supp. of Def.'s Mot. for Summ. J. at 16-25. Lincoln National also seeks a judgment declaring that it is entitled to recover its attorneys' fees relating to the underlying insurance coverage litigation in Breton I. See id. at 26-29. Breton has filed its own Motion for Summary Judgment [Dkt. No. 51], arguing that Lincoln National is not entitled to pass through to Breton the attorneys' fees and expenses in the Breton I litigation, and that Breton should be permitted to use the proceeds from the insurance and takings actions to first pay Silver & Brown's attorneys' fees, before remitting the remainder of the proceeds to Lincoln National. See Mem. in Supp. of Pl.'s Mot. for Summ. J. at 11-23, 29-30.

This Court must therefore determine the proper construction of the attorneys' fees provisions in the 2003 Deed of Trust, as well

as whether Silver & Brown's attorneys' fees lien takes priority
over, or is subordinate to, any interest that Lincoln National has
in the insurance and takings proceeds.[7]

## II.  Standard of review

Summary judgment is appropriate where the record demonstrates
"that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(c).  A genuine issue of material fact exists "if the
evidence is such that a reasonable jury could return a verdict for
the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247-48 (1986).  The Court must view the record in the light
most favorable to the nonmoving party, and must draw all inferences
in favor of that party.  See Bryant v. Bell Atl. Md., Inc., 288
F.3d 124, 132 (4th Cir. 2002).  However, "the mere existence of a
scintilla of evidence in support of the [nonmovant's] position will
be insufficient; there must be evidence on which the jury could
reasonably find for the [nonmovant]."  Anderson, 477 U.S. at 252;
see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir.
2008).

---

[7] Breton also raises a factual dispute regarding whether
the amounts charged in legal fees by Lincoln National's counsel,
Womble Carlyle, were reasonable and necessary.  See Mem. in Supp.
of Pl.'s Mot. for Summ. J. at 24-29.  That matter, however, will
be resolved based upon separate briefing after the issue of the
priority of any entitlements to fees is resolved.

Resolving a civil action on motions for summary judgment is especially appropriate where, as here, the dispute centers primarily on the construction of legal documents, and not on issues of fact.  See Global Title, LLC v. St. Paul Fire & Marine Ins. Co., No. 3:09CV550, 2011 WL 1597511, at *2 (E.D. Va. Apr. 26, 2011) ("Resolution of the instant matter through a grant of summary judgment is especially appropriate . . . because the construction of insurance contracts is a legal question well suited for resolution by the court." (omission in original) (quoting W. Am. Ins. Co. v. Johns Bros., Inc., 435 F. Supp. 2d 511, 513-14 (E.D. Va. 2006))); Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc., 677 F. Supp. 2d 852, 869 (E.D. Va. 2009) (holding that a dispute over the interpretation of contractual provisions is "particularly appropriate for a summary judgment motion").

### III. Discussion

For the reasons stated below, Lincoln National is entitled to summary judgment in its favor as a matter of law.

A.   **Lincoln National is entitled to receive the insurance and condemnation proceeds and to apply them as it chooses.**

As an initial matter, the plain language of the 2003 Deed of Trust entitles Lincoln National to receive the insurance and takings proceeds and to apply them as it chooses.  Virginia law requires strict adherence to the "'plain meaning' rule of

interpreting contracts, whereby clear and explicit language in a contract is to be taken in its ordinary signification." Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc., 446 F. Supp. 2d 551, 577 (E.D. Va. 2006). "[I]f the meaning is plain when so read, the instrument must be given effect accordingly." Id.; see also Berry v. Klinger, 300 S.E.2d 792, 796 (Va. 1983) ("We adhere to the 'plain meaning' rule in Virginia: where an agreement is complete on its face, [and] is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself") (internal citations and quotations omitted); Seaboard Air Line R.R. Co. v. Richmond-Petersburg Tpk. Auth., 121 S.E.2d 499, 503 (Va. 1961) ("The polestar for the construction of a contract is the intention of the contracting parties as expressed by them in the words they have used.") (quoting Ames v. Am. Nat'l Bank, 176 S.E. 204, 216 (Va. 1934)).

Here, Section 1.03 of the Deed of Trust expressly and unambiguously provides: (i) that Lincoln National "shall be entitled to receive and retain all insurance proceeds" for losses under insurance policies covering the subject properties; (ii) that Breton "assigns . . . all monies recoverable under each such insurance policy" to Lincoln National; and (iii) that Breton "authorizes" its insurer "to make payment for all such losses directly to [Lincoln National]." Def.'s Mot. for Summ. J., Ex. 3

21

§ 1.03(A)-(B). Furthermore, Section 1.03 specifically gives Lincoln National the "option" to apply all such proceeds "upon any indebtedness secured hereby in such order as [it] may determine." Id. § 1.03(A). Taken together, these provisions plainly empower Lincoln National to receive the insurance proceeds in full and to apply them as it sees fit. See also English v. Fischer, 660 S.W.2d 521, 523 (Tex. 1983) (holding that under the terms of a similar deed of trust, the mortgagee was entitled to collect the insurance proceeds after a fire and "to apply such proceeds to the indebtedness and pay the remainder to [the mortgagor]"); Lee v. Murphy, 253 Cal. App. 2d 205, 209 (Cal. Ct. App. 1967) (same).

Similarly, Section 1.05 of the Deed of Trust explicitly states that Breton "assigns" to Lincoln National "all judgments, awards[,] damages or settlements hereafter made resulting from condemnation proceedings or in lieu of any taking of the Property or any part thereof under the power of eminent domain." Def.'s Mot. for Summ. J., Ex. 3 § 1.05(A). Additionally, Lincoln National has "the right . . . to apply" any such condemnation proceeds first to its attorneys' fees and costs, and then to the rest of the indebtedness secured by the Deed of Trust. Id. Under the plain language of

22